# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| JULIAN R. LEE, JR., | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 2:17-cv-01367-SGC |
| SOCIAL SECURITY ADMINISTRATION, Commissioner, | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**[1]

Plaintiff, Julian R. Lee, Jr., appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). (Doc. 1). Plaintiff timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons stated below, the Commissioner's decision is due to be affirmed.

## I. FACTS, FRAMEWORK, AND PROCEDURAL HISTORY

This case has a long history. Plaintiff's claims for DIB and SSI date back to October 6, 2009, when he protectively filed, alleging a disability onset of June 28, 2008. (Doc. 15 at 1). The first ALJ denied Plaintiff's claims on March 24, 2011,

---

[1] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 11).

and eventually he appealed in this district. (*Id.* at 2). *See Lee v. Colvin*, No. 12-2935-KOB (N.D. Ala. *filed* Sept. 7, 2012). On March 31, 2014, Chief Judge Bowdre remanded to the Commissioner based on the first ALJ's misinterpretation of a report completed by Ms. Mina Price, a licensed clinical social worker. *Id.* at Doc. 11.

The Appeals Council remanded, and a second ALJ, Judge Merchant, issued an unfavorable decision on January 12, 2015. (R. 610-29). The Appeals Council remanded, finding Judge Merchant's assessment of Ms. Price's opinion was inconsistent with both Chief Judge Bowdre's order of remand and SSR 06-03p. (R. 636-37). Judge Merchant issued another unfavorable decision on June 3, 2016. (R. 642-654). The Appeals Council denied review, and Plaintiff appealed in this district. Accordingly, Judge Merchant's June 3, 2016 decision is the relevant opinion for purposes of this appeal. (*Id.*).

Plaintiff was thirty-eight at the alleged onset date; he was forty-six at the time of the ALJ's decision. (*See* R. 652). Plaintiff has a high school education and is able to communicate in English. (*Id.*). Plaintiff's past employment experience includes work as a forklift operator, day laborer, and grocery stocker. (*Id.*). Plaintiff alleged disability due to bipolar disorder and "deteriorating discs in [his] back." (R. 172).

2

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination whether the claimant is performing substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in SGA, he or she is not disabled and the evaluation stops. *Id*. If the claimant is not engaged in SGA, the Commissioner proceeds to consider the combined effects of all the claimant's physical and mental impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet durational requirements before a claimant will be found disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch,* 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, at which the Commissioner determines whether the claimant's impairments meet the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairments fall within this category, the claimant will be found disabled without further consideration. *Id.* If the impairments do not fall within the listings, the Commissioner determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four the Commissioner determines whether the impairments prevent the claimant from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, he or she is not disabled, and the evaluation stops. *Id.* If the claimant cannot perform past relevant work, the analysis proceeds to the fifth step, at which the Commissioner considers the claimant's RFC, as well as the claimant's age, education, and past work experience to determine whether he or she can perform other work. *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, he or she is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found Plaintiff had not engaged in SGA since the alleged onset of his disability. (R. 644). At step two, the ALJ found Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine ("DDD"), depression, bipolar disorder, and post-traumatic stress disorder ("PTSD"). (*Id.*).

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments meeting or medically equaling any of the listed impairments. (R. 645). Before proceeding to step four, the ALJ determined Plaintiff had the RFC to perform sedentary work with the following limitations:

> the claimant can never climb ladders, ropes, or scaffolds, and can do no work around unprotected heights or uneven terrain. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant can understand, remember, and carry out

> simple instructions for two-hour periods to sustain an eight-hour workday, provided all customary mid-morning, lunch, and mid-afternoon breaks are provided. The claimant can have occasional decision-making and infrequent changes in the work setting. The claimant can have occasional interaction with the general public, coworkers, and supervisors.

(R. 647).

At step four, the ALJ determined Plaintiff was unable to perform his past relevant work. (R. 652). Because the RFC did not allow a return to past work, the ALJ relied on the testimony of a vocational expert to find a significant number of jobs in the national economy Plaintiff could perform. (R. 652-53). The ALJ concluded by finding Plaintiff was not disabled. (R. 653).

## II. STANDARD OF REVIEW

A court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). A court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, a court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if a court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

No decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. DISCUSSION

In general terms, Plaintiff's appeal focuses on the ALJ's failure to develop the record regarding his mental and physical condition. (Doc. 15 at 7-10). The specific arguments asserted are difficult to discern, but Plaintiff's central contention is that—due to a stale record—the ALJ should have ordered a psychological consultative examination or review by a medical expert to provide a current record of Plaintiff's condition.

The Eleventh Circuit has noted "a hearing before an ALJ is not an adversary proceeding," and "the ALJ has a basic obligation to develop a full and fair record." *Graham v. Apfel,* 129 F.3d 1420, 1422 (11th Cir. 1997). But a claimant seeking benefits still bears the burden of proving disability. *See Doughty*, 245 F.3d at 1278. The ALJ "has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence . . . to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.,* 496 F.3d 1253, 1269 (11th Cir. 2007). The Eleventh Circuit has found a consultative examination is not required where a plaintiff had not sought significant treatment for the allegedly disabling impairment. *Castle v. Colvin*, 557 F. App'x 849, 853-54 (11th Cir. 2014) (reversing remand of ALJ to procure consultative examination regarding knee problems where plaintiff had not sought

7

treatment for his knee, denied musculoskeletal issues, and engaged in activities inconsistent with disabling knee problems).

The ALJ discussed the May 2005 MRI of Plaintiff's lumbar spine, showing: (1) a posterior central disc protrusion at L4-5; (2) bilateral facet hypertrophy with minimal encroachment but no impingement of the descending L5 nerve root; (3) bilateral facet hypertrophy at L5-S1 with a marked, diffuse disc bulge with neural foraminal narrowing bilaterally with encroachment and a possible impingement of the exiting L5 nerve root. (*See* R. 648). However, the ALJ further noted: (1) Plaintiff sought treatment for DDD on only four occasions since 2006, all while incarcerated; (2) treatment on those occasions was limited to over-the-counter pain relievers and muscle relaxers; and (3) Plaintiff testified he does not regularly take any medication for back pain and had not done so for the eighteen months preceding the hearing. (*See id.*). The ALJ concluded this lack of treatment undermined Plaintiff's claims of constant disability due to DDD. (R. 648, 650).

In addition to this older medical evidence, the record also includes more contemporaneous evidence to support the ALJ's conclusions regarding Plaintiff's DDD. On April 19, 2013, Plaintiff visited the Princeton Baptist Medical Center Emergency Department, complaining of left wrist pain. (R. 804). The injury occurred while Plaintiff was changing a tire. (*Id.*). The treatment notes from this visit reflect that, aside from the left wrist, all physical systems were "negative" and

a musculoskeletal exam revealed "normal range of motion." (R. 805-06). Plaintiff returned to Princeton complaining of continued wrist pain on May 17, 2013. (R. 810). A musculoskeletal exam again revealed Plaintiff had "normal range of motion." (R. 812). Records from a third visit to Princeton on December 30, 2013, regarding lingering pain from the left wrist injury also do not reflect any back problems or complaints. (R. 823). On August 7, 2014, Plaintiff visited the Princeton Emergency Department complaining of right wrist pain due to an injury he sustained while "helping a friend lift a heavy lawn mower." (R. 866). Again, the treatment note associated with this visit is silent regarding complaints or indications of DDD-related symptoms.

The foregoing records support the ALJ's conclusion that Plaintiff's DDD was not disabling. Plaintiff did not complain of DDD, and medical professionals did not detect any DDD-related symptoms. Likewise, Plaintiff's wrist injuries arose from activities—changing a tire and lifting a heavy lawnmower—in which a person suffering from severe DDD would not engage. Plaintiff also visited the Princeton E.R. in 2013 and 2015 for jaw and neck pain. (R. 817, 861). Again, records from these six E.R. visits reveal normal musculoskeletal exams and no complaints or indications of DDD. (R. 817-19; 861-63).

All of the foregoing medical records—both old and new—allowed the ALJ to make an informed decision regarding Plaintiff's DDD without ordering a

consultative examination. *Castle*, 557 F. App'x at 853-54. Moreover, the ALJ's decision in this regard is supported by substantial evidence.

Regarding mental impairments, the ALJ noted Plaintiff's diagnoses of bipolar disorder, PTSD, and depression. The ALJ accurately noted Plaintiff received regular mental health treatment—both medication and monthly counseling services—while incarcerated in the Alabama prison system from 2006 to 2009. (R. 648). While incarcerated, Plaintiff's Global Assessment of Functioning ("GAF") scores improved from the 50s to 73.[2] Upon release from prison in September 2009, Plaintiff was referred to Indian Rivers, a mental health center. (R. 649). On September 19, 2009, shortly after his release from prison but before visiting Indian Rivers, Plaintiff sought treatment at the UAB Emergency Department, reporting long-standing suicidal thoughts. (R. 418). Plaintiff was hospitalized until September 28, 2019, when he was stabilized on medication, assigned a GAF of 60, and noted to be in "good" condition on discharge. (R. 420-22). Plaintiff was diagnosed with depression, psychosis, and a rule-out diagnosis of major depression with psychotic features. (R. 420). However, treatment notes

---

[2] GAF scores measure how a person's mental illness affects their daily life on a 100 point scale. A GAF score represents a clinician's judgment about the severity of an individual's symptoms at a particular moment in time: a snapshot as opposed to a longitudinal study. *See Thornton v. Comm'r Soc. Sec. Admin.*, 597 F. App'x 604, 613 (11th Cir. 2015). A GAF of 51-60 indicates the patient is experiencing moderate symptoms and functional limitations. *DSM-IV-TR* at 34. A GAF of 61-70 indicates mild symptoms and some difficulties in functioning. *Id*. A GAF of 71-80 indicates symptoms would be "transient and expectable reactions to psychological stressors," which would cause no more than slight impairment in social, occupational, and educational functioning. *Id.*

also reflect the medical staff's opinion that Plaintiff exhibited "likely manipulative type behavior." (R. 419).

On October 15, 2009, Plaintiff visited Indian Rivers. On this initial visit, Ms. Price completed the intake form which provided the basis for: (1) the district court's remand after the first ALJ's decision; and (2) the Appeals Council's remand following Judge Merchant's first decision. (R. 433-35). While Ms. Price assessed a GAF of 47 and noted Plaintiff was paranoid and depressed, she also found he exhibited logical thought processes, normal affect, and unremarkable behavior. (*Id.*). After this initial visit, Plaintiff did not return to Indian Rivers until March 2010, when he reported he had not taken any psychiatric medication since his hospitalization. (*See* R. 649). Plaintiff returned to Indian Rivers in April 2010, November 2010, April 2011, March 2012, January 2013, and twice in August 2013. (*See id.*). During the hearing, Plaintiff testified he had not seen any mental health professional or taken any psychiatric medication since October 2014. (*See id.*).

The ALJ found Plaintiff's sporadic psychiatric and/or psychological treatment supported his conclusion that he was not disabled. (R. 650). The ALJ also noted the Plaintiff's testimony that he did not have health insurance. (*Id.*). However, due to Plaintiff's inconsistent testimony regarding his eligibility for treatment at the V.A., the ALJ concluded it was more likely Plaintiff simply had

11

not sought treatment. (R. 650). On appeal, Plaintiff does not challenge this conclusion, the ALJ's description of his mental health treatment history, or the ALJ's decision to give little weight to Ms. Price's intake form. (R. 651).

In addition to the foregoing older medical evidence, the record also includes more contemporaneous evidence to support the ALJ's conclusions regarding Plaintiff's psychiatric condition. Specifically, the previously-discussed records from Plaintiff's visits to the Princeton E.R. for physical pain and injuries also touch on Plaintiff's mental health. All of the treatment notes from these E.R. visits reflect Plaintiff was "oriented to person, place and time." (R. 806, 812, 819, 825, 863, 868). All of the treatment notes, except for those created during the April 19, 2013 visit—which are silent on the issue—show Plaintiff had "normal mood and affect." (R. 812, 819, 825, 864, 868). During visits to the Princeton E.R. on May 17, 2013, August 7, 2014, and November 27, 2015, the treatment notes reflect Plaintiff had normal behavior, judgment, and thought content. (R. 812, 825, 864, 868). During the May 17, 2013 and August 7, 2014 visits, the Plaintiff was found to be under "[n]o distress." (R. 812, 868). While Plaintiff's visits to the Princeton E.R. were motivated by physical injuries and pain, the records created during these visits note his history of mental illness and psychiatric diagnoses. Additionally, Plaintiff's E.R. visits support the ALJ's unchallenged conclusion that his lack of insurance was not a significant barrier to seeking medical attention. The foregoing

12

records support the ALJ's conclusion that Plaintiff's mental impairments were not disabling; they show that during six trips to the E.R. over a thirty-month period, Plaintiff did not complain of—and medical professionals did not detect—any current psychiatric problems.

All of the foregoing evidence allowed the ALJ to make an informed decision regarding Plaintiff's mental impairments without ordering a consultative examination. *Castle*, 557 F. App'x at 853-54. Moreover, the ALJ's decision in this regard is supported by substantial evidence.

Plaintiff's remaining arguments are not fully developed but touch on: (1) reliance on an MRI taken in 2005; (2) failing to develop the record in light of SSR 96-6p and SSR 83-20; and (3) conflating the lack of evidence with substantial evidence. (*See* Doc. 15 at 7-11).[3] Any other arguments Plaintiff may have intended to assert are insufficiently elucidated and are waived. *See Buttram v. Comm'r*, 594 F. App'x 569, 572 (11th Cir. 2014) (plaintiff's "cursory and conclusory" arguments before the district court waived the issues on appeal). Although this opinion has already largely discussed Plaintiff's contentions, his remaining discernable arguments are addressed in turn, albeit briefly.

---

[3] Plaintiff also incorporates by reference the arguments raised in his letter to the Appeals Council. (Doc. 15 at 7; *see* R. 757-61). These arguments are duplicative of those Plaintiff raised in the briefing here.

Regarding the ALJ's reliance on the 2005 MRI, Plaintiff apparently contends that, because DDD is a progressive condition, a current MRI would likely show more advanced DDD. (Doc. 15 at 7, 8, 9). The foregoing discussion regarding Plaintiff's lack of treatment and medical records showing no complaints or evidence of disabling DDD applies equally here; Plaintiff is not entitled to relief on this ground. The same is true to the extent Plaintiff contends SSR 83-20 required the ALJ to engage a medical expert. (*See* Doc. 15 at 9).

Regarding SSR 96-9p, Plaintiff contends the RFC for a reduced range of sedentary work requires heightened scrutiny. Plaintiff does not cite any authority to shed light on this argument. (Doc. 15 at 8-9). It appears Plaintiff may be attempting to argue the ALJ did not properly perform a function-by-function assessment in determining his RFC. (*Id.*). The court disagrees and cannot discern any reversible errors in the ALJ's RFC determination.

Finally, Plaintiff contends the ALJ conflated a lack of evidence with substantial evidence. (Doc. 15 at 9-10). Again, the foregoing discussion answers the question. Plaintiff conflates the lack of evidence *of treatment* with a lack of evidence. The record here is developed; there is plenty of evidence. The problem for Plaintiff is that the record does not include evidence *of treatment*. *See Castle*, 557 F. App'x at 853-54; *see also Wheeler v. Heckler,* 784 F.2d 1073, 1075 (11th Cir. 1986); *Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 843 (11th Cir. 2014).

More importantly, the record did contain sufficient evidence for the ALJ "to make an informed decision." *Ingram,* 496 F.3d at 1269.

## IV. CONCLUSION

Upon review of the administrative record and considering all of Plaintiff's arguments, the undersigned finds the Commissioner's decision is supported by substantial evidence and is in accord with applicable law. Accordingly, the Commissioner's decision is due to be affirmed. A separate order will be entered.

**DONE** this 27th day of March, 2019.

*[signature]*
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE